STATE OF NEW JERSEY IN THE INTEREST OF K.A.W.

Argued September 8, 1986—Decided October 20, 1986.

*Steven S. Neder,* Cumberland County Prosecutor, argued the cause for appellant State of New Jersey (*Kathleen A. Berkheiser,* Assistant Prosecutor, on the briefs).

*Susan T. Sinins,* Assistant Deputy Public Defender, argued the cause for respondent K.A.W. (*Alfred A. Slocum,* Public Defender, attorney).

*Debra L. Stone,* Deputy Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey (*W. Cary Edwards,* Attorney General, attorney).

The opinion of the Court was delivered by

CLIFFORD, J.

This appeal, on certification granted, 104 *N.J.* 112 (1986), requires us to address yet another facet of the "sensitive and delicate issues surrounding * * * the sexual abuse of children." See *State v. R.W.,* 104 *N.J.* 14, 16 (1986). The issue as posed in the State's petition for certification is whether a complaint in a juvenile delinquency action, charging sexual assault on a victim younger than thirteen years of age, must specify an exact date of occurrence. The answer to that question is "no." For constitutional due process purposes, the adequacy of a charge

set forth in a juvenile delinquency complaint, as in a criminal indictment, turns on whether the notice contained in the complaint sufficiently apprises the accused of the offense with which he is charged to enable him to prepare a defense. The Appellate Division held that a juvenile complaint must set forth a specific date or dates of the offense. Because we conclude that "fair notice" in this context is not concerned exclusively with specificity of a date of offense, we reverse the judgment below.

## I

In January 1985 the victim of the alleged sexual assault, L.T., was seven years old. She lived in Millville with her grandmother. Also living in the home were the juvenile, K.A.W., then seventeen years old, and his guardian, as well as L.T.'s sister. Although it is not part of the record, we were informed at oral argument that around that time there was a presentation at L.T.'s school designed to help the youngsters recognize, and thus avoid, situations that posed a danger of sexual assault. Sometime after that presentation L.T. told two of her classmates that she had been sexually abused by her housemate, K.A.W. The classmates in turn notified the school authorities, who reported the charge to the Division of Youth and Family Services (DYFS).

When interviewed by a DYFS worker and later by a police officer, L.T. said that on a number of occasions K.A.W. had come into her bedroom and touched her with his penis on her stomach and between her legs. She explained that she had never previously related these incidents to anyone, out of fear both that her grandmother would punish her and that K.A.W. would make good his threat to beat her if she revealed what he had done.

When confronted, K.A.W. denied any sexual involvement with L.T. They no longer reside in the same household.

About a month after the foregoing incidents were reported, K.A.W. was formally charged under *N.J.S.A.* 2A:4A–23 with juvenile delinquency, based on conduct that if committed by an adult would constitute a crime, namely, the second-degree crime of sexual assault as defined by *N.J.S.A.* 2C:14–2(b) ("An actor is guilty of sexual assault if he commits an act of sexual contact with a victim who is less than 13 years old and the actor is at least four years older than the victim."). The juvenile complaint alleged that in midyear 1984 K.A.W. "committed an act of sexual assault upon [L.T.] by placing his genital upon the stomach of the victim with intent to sexually gratify the accused."

In June 1985 K.A.W. moved to dismiss the complaint "or, in the alternative, for a more specific statement as to the date and time of the alleged sexual assault." At the hearing on the motion the State moved to amend the complaint to reflect the time of the alleged offense as having occurred "on divers dates from January 1983 through August 1984," rather than simply "midyear 1984." In the course of the colloquy on the motion to amend, which the court granted, it became apparent that the victim complained of "more than one incident;" that the State was contending that "this was an ongoing occurrence" and hence analogous to a conspiracy charge (thereby obviating the need for specificity concerning the time of the offense, *see, e.g., State v. Maddox,* 153 *N.J.Super.* 201, 208 (App.Div.1977)); that the State had supplied the juvenile with full discovery; and that as of the date of the hearing on the motion, "more specific information [was] simply not available."

In support of his motion to dismiss the now-amended complaint K.A.W. argued that so lacking was the complaint in essential information about when the act of juvenile delinquency was alleged to have occurred that he was unable to construct a defense. The absence of that information, he said, prejudiced him in at least two ways, as his attorney contended at the argument on the motion:

[W]e have a potential alibi for at least a portion of that time during which the divers dates fell. [K.A.W.] visited his mother in Virginia during last summer. He was down there for approximately a month or so.

It is during the summer as—even as amended we are up to 8/84 as part of the divers dates. He was with his mother in Virginia for a good portion of that time, for a period of weeks. Unless we know specifically what dates are involved here, we can't even allege an alibi to combat it.

Further, at this point if we now set forth this alibi, as I've done here by way of argument, the prosecutor's in the position where the prosecution can now design its case to fall outside the bounds of the period that he was in Virginia. That's the reverse of what the usual process is and sequence of events in terms of the prosecution presenting its case, and the defense presenting a—an alibi defense, or whatever other defense there may be.

Furthermore, investigation by its very nature may turn up things—I mean, the point is you want to learn facts. Until we know specifically the entire prosecution case, it makes it rather difficult to conduct an investigation to find out whatever else may be helpful in terms of defending against the charge.

In those ways, both the specific ways we already know and the potential ways, we haven't been informed specifically enough to allow us to construct the best possible defense to these charges.

The trial court recognized "the problems faced by the prosecution * * * in any type of case involving a charge of sexual-related offense against a seven-year-old," but nevertheless granted K.A.W.'s motion to dismiss because it believed that otherwise the juvenile would have to "put up a shotgun defense" to meet the twenty-month period embraced by the complaint.

The State appealed to the Appellate Division. *State in the Interest of K.A.W.*, 207 *N.J.Super.* 19 (1986). That court recognized that "[t]he polestar for determining the sufficiency of a juvenile complaint is whether the complaint gives a juvenile offender notice of what he must defend against," *id.* at 21, and that "[l]ack of specificity in a juvenile complaint * * * cannot be permitted if the juvenile may be misled to his prejudice in the preparation of a defense." *Ibid.* The court said:

The amended complaint alleged that the sexual assault occurred on "divers dates in January 1983 through August 1984." If the State can establish beyond a reasonable doubt that a sexual assault occurred on any date, that would sustain a finding of juvenile delinquency under *N.J.S.A.* 2A:4A–23. Only a single finding of delinquency can be made on the single complaint. Consequently, proof of numerous incidents would only buttress a finding of delinquency. In the circumstances, we discern no reason to permit the State to use

the "shotgun" approach if the victim and the State's other proofs cannot demonstrate the dates in advance of trial. [*Id.* at 22.]

The Appellate Division therefore affirmed the dismissal of the amended complaint but vacated so much of the trial court's order as made the dismissal "with prejudice." It allowed the State a brief period within which "to move before the Family Part * * * to amend the complaint to specify one or more exact dates" on which a sexual assault was allegedly perpetrated, and it encouraged the trial court to grant such a motion should one be presented. Finally, the court below held that "[f]ailure to amend the complaint [to specify one or more exact dates] shall result in a dismissal with prejudice."

## II

Although there is much in the Appellate Division's thoughtful opinion that appears to accept the proposition that a single specific date is not the absolute minimum requirement of due process, it is the "bottom line" of the opinion—failure of a juvenile complaint to allege the specific date of a sexual offense against an infant of tender years will produce a dismissal with prejudice—that has generated the most concern over this case. The Attorney General, as *amicus curiae*, joins the Cumberland County Prosecutor on his appeal in pursuit of a more flexible rule. The Public Defender, appearing on behalf of K.A.W., candidly acknowledges that precision to the point of "one or more exact dates," as required by the Appellate Division, should not be indispensable in order for a juvenile complaint to satisfy the requirement of fair notice; rather, he asserts in his brief that the opinion below should be read "to require only an allegation of more specific dates."

In that connection we are informed that both Houses of the Legislature have passed a bill, A–2640/2442, that relieves the State from setting forth in a "criminal complaint" the specific date on which a violation of *N.J.S.A.* 2C:14–2 (sexual assault) or *N.J.S.A.* 2C:14–3 (criminal sexual contact) is alleged to have occurred, when "the victim is under the age of 13 years or is

physically helpless, mentally defective or mentally incapacitated
* * *." The proposed legislation requires instead that the
prosecutor "charge in a complaint and offer proof * * * to
establish that a violation occurred within a specified reasonable
period of time." Under the bill the inability of the prosecution
to prove an exact date may be considered by the trier of fact on
the issue of credibility of the victim or on the issue of the guilt
or innocence of the defendant. At the time of publication of
this opinion the legislation awaits the Governor's review.

Finally, the record contains a motion of the prosecutor, filed
in the Chancery Division, Family Part, to amend the complaint
(obviously in response to the Appellate Division opinion) "to
charge one count of sexual assault for each and every day
between January 1, 1983, and August 31, 1984." That motion
has not yet been heard, the appeal to this Court having inter-
vened.

The concerns of interested parties, as recited above, revolve
around the kind of notice that must be afforded the juvenile in
a complaint charging an offense involving a victim so young as
to make it well-nigh impossible to state the *exact* time of that
offense. It warrants emphasis that we do not focus here on the
level or quality of proof required to sustain a finding of juvenile
delinquency or a criminal conviction; rather, our concern is with
the specificity required, in the interest of fairness, at the
charging stage of the proceeding.

In gauging that fairness we need no battery of experts to
convince us that a child of the age of five to seven years—the
time span encompassed when the period from January 1983
through August 1984 is applied to this victim—cannot recall
precise dates or even approximate times the way a normal adult
can. Children of that age do not think in terms of dates or time
spans. Unlike adults, their lives are not controlled by the clock
or the calendar—at least, not as rigidly and surely not as
consciously. Nor do we need record support in the form of
psychiatric testimony to establish the proposition that children

frequently suppress the trauma of sexual molestation or en-
counter difficulty in isolating the experience, particularly when,
as is now alleged to be the case here, that experience involves
one with whom the victim shares living quarters, or when the
offender is an authority figure or relative who takes advantage
of his close relationship with the victim. See R. Summit, "The
Child Abuse Accommodation Syndrome," 7 *Child Abuse &
Neglect* 177, 178, 182–87 (1983). In that regard the Attorney
General reminds us of the depressing statistic that in New
Jersey 67.8% of all children who are molested are related to the
molester.

To be balanced against the need to vindicate the State's
interest in the vigorous prosecution of child molesters is the
accused's interest in receiving sufficiently adequate notice of
the offense to permit him to prepare a defense. That the
requirement of due process extends to juvenile proceedings is
no longer open to question since *In re Gault,* 387 *U.S.* 1, 87
*S.Ct.* 1428, 18 *L.Ed.*2d 527 (1967) (juvenile entitled, under due
process, to notice "sufficiently in advance of scheduled court
proceedings so that reasonable opportunity to prepare will be
afforded * * *," *id.* at 32, 87 *S.Ct.* at 1446, 18 *L.Ed.*2d at 549;
the notice required is "of the sort [that] would be deemed
constitutionally adequate in a civil or criminal proceeding."
*Ibid.*). And although *State in Interest of W.E.C.,* 81 *N.J.* 442
(1979), suggests in dictum that "the court's scrutiny of the
adequacy of a charge in an indictment would ordinarily be
stricter than its assessment of the sufficiency of a juvenile
complaint," *id.* at 448, since the time *W.E.C.* was decided, the
force of that suggestion surely has been diluted by virtue of
the enactment of the New Jersey Code of Juvenile Justice
(Juvenile Code), *L.* 1982, *c.* 77, codified at *N.J.S.A.* 2A:4A–20 to
–49, effective December 31, 1983, and the promulgation of
parallel Rules of Court, effective the same date. Both by
statute, *N.J.S.A.* 2A:4A–30(a)(3), and by Rule 5:20–1(a)(3), a
juvenile complaint must now contain the date, time, place, and
nature of the acts or conduct alleged as the basis of the

complaint. The same statute provides that juvenile complaints "shall be in such form as prescribed by the Rules of Court," *N.J.S.A.* 2A:4A–30(c), and the same Rule permits the amendment of the complaint "to correct an error in form or the description of the offense intended to be charged * * * provided that the amendment does not charge another or different offense from that alleged and the defendant will not be prejudiced thereby in his defense on the merits." *R.* 5:20–1(d). Finally, any doubt about the extent to which constitutional rights must apply to juveniles is removed by *N.J.S.A.* 2A:4A–10, which reads:

> All defenses available to an adult charged with a crime, offense or violation shall be available to a juvenile charged with committing an act of delinquency.
>
> All rights guaranteed to criminal defendants by the Constitution of the United States and the Constitution of this State, except the right to indictment, the right to trial by jury and the right to bail, shall be applicable to cases arising under this act.

### III

■ Turning now to the question of the adequacy of the complaint in this case, we note first that because the precise date on which the offense of sexual assault occurs is not a legal constituent of the crime, the date need not be set forth in the complaint, *see State v. Davis,* 6 *N.J.Super.* 162, 164 (App.Div. 1950)—that is, the "technical" requirements of the statutory offense do not call for a statement of when the criminal act occurred. But, as noted, both the statute, *N.J.S.A.* 2A:4A–30(a)(3), and Rule 5:20–1(a)(3) specify that the date and time must be included in the juvenile complaint. We are satisfied, as indeed is K.A.W.'s attorney, that those statute and Rule provisions need not be read literally. As applied to cases of this sort their purpose is fulfilled if the complaint sets forth sufficient information to permit the juvenile to plan and assert his defense, for a literal application of the "date" and "time" provisions of the statute and Rule would effectively preclude prosecution of those who have sexually abused children who are unable to specify a date.

■ There being no facial defect in the complaint, therefore, the next step is to determine whether the juvenile has received fair notice of the charge against him. That requires a careful examination of the information that the State has divulged. The court must first determine whether the State has disclosed all the information it has about when the act of delinquency is alleged to have occurred. We have no doubt that there was full disclosure here; no one suggests there was not. Even though the Juvenile Code contains no provision for discovery, the custom—almost invariable in matters such as this—is for the State to open its file to the juvenile, and hence at no time has there been a recommendation from the appropriate Supreme Court committee for us to amend our Rules to structure discovery procedures in juvenile delinquency actions similar to those embodied in our Rules governing criminal practice, Rules 3:13-1 to -4, nor does it appear that any question has ever arisen in that regard. The process has become, commendably, self-regulating. We see no need to intrude at this juncture.

Contrary to the State's assertion at oral argument on this appeal, however, the prosecution cannot avoid a dismissal of the complaint merely by showing that it has turned over to the juvenile all the information at its disposal and that its information-gathering effort, reduced in the complaint to a statement of a 20-month time span, represents its best effort. The harsh reality of the matter is that the product of the State's most diligent and imaginative investigative techniques may nevertheless fail to meet the requirement of fair notice to the juvenile.

In balancing the competing interests—the State's in prosecuting child molesters and protecting this extremely vulnerable class of victims from sexual exploitation, the accused's in receiving fair notice—a trial court confronted with a motion to dismiss must engage in a most delicate exercise. It demands judging at its best. To state the problem of balancing is to reveal its fact sensitivity. Although fixed, precise standards are not available as guides to resolution of the issue, there are some general criteria to aid a court in its review of the adequa-

cy of "time" information set forth in a complaint, as informed by the details disclosed in the State's investigation.

One approach is that suggested by the Court of Appeals of New York in *People v. Morris*, 61 *N.Y.*2d 290, 473 *N.Y.S.*2d 769, 461 *N.E.*2d 1256 (1984), involving a prosecution of an adult. Although on its facts *Morris* was an "easier" case than the one before us in that the crimes were alleged to have been committed within a 24-day period, the opinion is nevertheless instructive. The Court ruled that in determining whether, under the circumstances, the designated period of time set forth in the indictment is reasonable,

> factors to be considered might include but should not be limited to the length of the alleged period of time in relation to the number of individual criminal acts alleged; the passage of time between the alleged period for the crime and defendant's arrest; the duration between the date of the indictment and the alleged offense; and the ability of the victim or complaining witness to particularize the date and time of the alleged transaction or offense.
> [*Id.* at 296, 473 *N.Y.S.*2d at 773, 461 *N.E.*2d at 1260.]

The parties before us do not quarrel with the pertinence of the foregoing factors. Indeed, both parties accept, as do we, not only the *Morris* criteria but also those recommended by the *amicus*, the Attorney General, who suggests consideration of the following in addition to the *Morris* factors: the age and intelligence of the victim, the extent and thoroughness of the prosecutor's investigative efforts to narrow the time frame of the alleged offense, and whether there was a continuous course of conduct.

The list is simply illustrative. As the cases surface, other considerations doubtless will come to mind, and the weight to be accorded the factors will vary according to the circumstances of the case. We do not insist on adherence to any particular formula. Rather, what is required is an especially diligent scrutiny of the facts of the incident as they may be disclosed. The aim is to narrow the time frame of the occurrence as complained of—if not to the extent of an exact date or dates, then possibly in respect of seasons of the year, or incidents in the victim's life such as a death in the family, or a change in a

family member's job routine, or the beginning of the school year or of vacation time or of extracurricular activities. When the trial court is satisfied that these sources of information have been exhausted, it will then be in a position to strike the necessary balance to determine whether "fair notice" has been given.

We would add only that to the extent the juvenile or criminal defendant makes known his defense—here, non-involvement, supplemented by an alibi for a brief period during the 20–month span—that too may be placed in the scales. The fact, if such it be, that an alibi defense might suffer in the face of an extended time frame does not constitute a sufficient basis for dismissal of a complaint in this context, where a "number of occasions" of misconduct are alleged. It may be pertinent in this regard that whereas the opportunity to victimize an infant is enhanced by a degree of family relationship or sharing of living quarters or frequency of contact, by the same token the likelihood of the victim being able to recount a specific time of the offenses is reduced. The events blur.

## IV

In view of the constantly changing nature of the record in this case, we do not assay a final resolution of the issue presented. Recall that the original complaint alleged *an* act of sexual assault in midyear 1984; that the amended complaint set forth the alleged offense as having occurred "on divers dates from January 1983 through August 1984;" and that the State's motion, pending in the Chancery Division, seeks to amend the complaint to charge "one count of sexual assault for each and every day between January 1, 1983, and August 31, 1984" (an allegation that, we gather from oral argument, no one takes seriously).

We have ruled, contrary to the Appellate Division, that the complaint need not specify "one or more exact dates." Reflective of the fluid nature of the record, we were told at oral

argument that the State is now in a position to charge "four or five occurrences" within the 20–month period. We therefore remand the cause to the trial court to afford the State the opportunity to move to file an amended complaint, with resolution of any challenge thereto to be made by the trial court in light of the standards set forth herein. We do not take any position on how the issue should be resolved, nor do we imply any.

The judgment of the Appellate Division is reversed. The cause is remanded for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For affirmance*—None.