42 A.3d 196 (2012)
425 N.J. Super. 504
STATE of New Jersey, Plaintiff-Appellant,
v.
Kiwanie SALTER, Defendant-Respondent.
Docket No. A-4410-10T2
Superior Court of New Jersey, Appellate Division.
Argued February 28, 2012.
Decided May 8, 2012.
*199 Sara A. Friedman, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for appellant (Carolyn A. Murray, Acting Essex County Prosecutor, attorney; Ms. Friedman, of counsel and on the brief).
John D. Caruso argued the cause for respondent (Caruso & Diaz, LLC, attorneys; Mr. Caruso, on the brief).
Before Judges MESSANO, YANNOTTI and ESPINOSA.
The opinion of the court was delivered by
MESSANO, P.J.A.D.
We granted the State of New Jersey's motion for leave to appeal from the Law Division's order dismissing with prejudice counts four and six of Essex County Indictment No. 07-02-0430 against defendant Kiwanie Salter. For the reasons that follow, we affirm in part, reverse in part and remand the matter for further proceedings.

I.
The procedural history of this matter requires some explication.
In his testimony before the grand jury, T.B., who was twelve-years old when the events allegedly occurred, stated that during the morning of September 3, 2006, defendant placed T.B.'s hand and mouth on defendant's penis while both were in the pantry of T.B.'s home. T.B. testified that later in the afternoon of September 3, defendant anally penetrated him and had T.B. place his hand on defendant's penis for a second time. T.B. testified that on the following day, September 4, defendant placed his mouth on T.B.'s penis and anally penetrated him.
Based upon this testimony, on February 7, 2007, the grand jury returned a seven-count indictment against defendant. Each count alleged that the criminal conduct took place "on or about the 2nd day ... and the 5th day of September[ ] 2006." In identical language, counts one and two charged defendant with first-degree aggravated sexual assault of T.B. by anal penetration. N.J.S.A. 2C:14-2(a)(1). Counts three and four charged defendant in identical language with first-degree aggravated sexual assault of T.B. by oral penetration. N.J.S.A. 2C:14-2(a)(1). Defendant was charged in identical language in counts five and six with two counts of third-degree aggravated criminal sexual contact of T.B. N.J.S.A. 2C:14-3(a).[1] And, count seven charged defendant with third-degree endangering the welfare of T.B. N.J.S.A. 2C:24-4(a).
At trial, T.B. testified that during September 2006, he lived with his mother and four sisters.[2] In the morning of September 3, his sister woke him up and told him that defendant was in the house. According to T.B., his mother and defendant had *200 been involved in a romantic relationship and on occasion defendant slept in the pantry. When T.B. walked into the pantry, defendant got up from his bed and grabbed the boy's arm. Defendant proceeded to place T.B.'s hand on his penis and also placed his penis in T.B.'s mouth. T.B. also testified that later in the afternoon on September 3, defendant came downstairs and started to touch T.B.'s penis and buttocks. Defendant placed his penis in T.B.'s mouth and then anally penetrated T.B. while the two of them were on a staircase of the home.
That evening, after everyone had gone to bed, defendant motioned for T.B. to come back to the pantry. Defendant again placed his penis in T.B.'s mouth and anally penetrated T.B. When defendant subsequently left, T.B. wrote a note to his mother explaining what had happened. His mother called the police.
There were no other witnesses to the alleged sexual crimes. It suffices to say that T.B. was subject to vigorous cross-examination that highlighted inconsistencies between his grand jury and trial testimony.
During the jury charge, the judge did not identify any specific conduct as the bases for the charges contained in counts one through six. With respect to the two aggravated sexual assault by oral penetration counts, she told the jury:
Counts [three] and [four] of the indictment charge the defendant with aggravated sexual assault between on or about the second day of September[ ] 2006, and the fifth day of September[ ] 2006, in the City of Newark, and County of Essex, and within the jurisdiction of this Court did knowingly commit an aggravated assault by oral penetration, mouth to penis, upon T.B. ... age 12.
The instructions as to counts five and six were similarly provided:
Now, Count [five] and Count [six] o[f] the indictment as amended, charge[ ] the defendant with criminal sexual contact between on or about the second day of September[ ] 2006, and the fifth day of September[ ] 2006, in the City of Newark, and County of Essex, and within the jurisdiction [of] this court, did commit an act of criminal sexual contact upon T.B.
Following the charge, the prosecutor requested a sidebar to discuss the verdict sheet.
PROSECUTOR: Judge, anal penetration happened in the second and third. So, she has the first event, and that's not
DEFENSE COUNSEL: Except it's charges reflect the language in the indictment and that's what they do.
PROSECUTOR: No, that's just the order.
THE COURT: How about the first time. Now, it'sI think we're saying first event the first time. Morning, afternoon and night. It was just being that the first time and second time.
DEFENSE COUNSEL: There was conflicting testimony as whether or not it happened. The last event was on Sunday night or Monday night. So, I don't think it's fair for us or appropriate for us to insert what dates we think things
PROSECUTOR: Even separating it out. First event, second event is just confusing because they can speculate, well, did that happen the first time? Did that happen [the] second time?
THE COURT: Should be in more general terms of whether he committed this act onetwo acts. I don't think it should be a time period. I think general time period between September second and September fifth is adequate. *201 Whether this happened two times and this happened two times. That's why the indictment was laid out the way it was, not because of first event or second event. Changing from what we discussed in chambers.
DEFENSE COUNSEL: Now, I'm realizing that testimony reflected in the first event was fondling and second event was the anal and oral penetration.
. . . .
PROSECUTOR: I don't just take it out or leave it as is.
Right.
DEFENSE COUNSEL: Between. Okay. I have no problem with that, Judge.
THE COURT: Then, we'll take it out.
. . . .
DEFENSE COUNSEL: All six of them.
THE COURT: We'll do that. They may come back for questioning not understanding why there's onetwo counts for the samemay realize from the testimony it happened several times.
DEFENSE COUNSEL: Judge, I think it happened or didn't happen.
THE COURT: I understand that. They'll make their determination as to that.
DEFENSE COUNSEL: It becomes a problem, I'm sure they'll ask us a question.
PROSECUTOR: One event or another event. Phrase it like that to make more sense simply saying firstwas that the first timefirst time.
DEFENSE COUNSEL: Take the language out altogether. We'll take it out. Anal penetration of [T.B.] between on or about. So, I'll take it out on the first event.
DEFENSE COUNSEL: Come out of all six counts.
PROSECUTOR: All.[3]
The jury was excused, changes were made to the verdict sheet, and the attorneys and the judge reconvened on the record:
THE COURT: Real quickly on the record. [Counselors], I have just provided you a copy of the verdict sheet[ ] [for] your review after the request to now take out the first event and second event.
DEFENSE COUNSEL: That's fine, Judge.
PROSECUTOR: That's satisfactory, Judge. Yes.
The jury returned not guilty verdicts on counts one and two charging defendant with aggravated sexual assault by anal penetration. The verdict sheet as submitted to the jury asked:
How do you find as to Count Three (3) of the Indictment charging Defendant... with First Degree Aggravated Sexual Assault by oral penetration upon [T.B.] between, on, or about the 2nd day of September[ ] 2006 and the 5th day of September[ ] 2006?
The jury checked "not guilty." Using identical language, the verdict sheet asked the same question as to "Count Four (4)," aggravated sexual assault by oral penetration. The jury checked "guilty." The jury also found defendant guilty of counts five and six, charging criminal sexual contact, and count seven, charging endangering.
At sentencing, the judge imposed a fifteen-year term of imprisonment with an *202 85% parole ineligibility period on count four. The judge also imposed concurrent one-year sentences on counts five and six, and merged count seven into count four. Defendant appealed.
In an unpublished opinion, we reversed defendant's conviction based upon the prosecutor's presentation of "prejudicial, inadmissible evidence." State v. Salter, No. A-0502-08, 2009 WL 4981169 (App. Div. Dec. 24, 2009) (slip op. at 1). The nature of this evidence is irrelevant to our consideration of the issues presented by the State's current appeal. The matter was remanded for a new trial.
Defendant moved to dismiss the indictment on the grounds of double jeopardy. The judge, who was not the trial judge, conducted a status conference and considered defendant's argument that counts three and four were "indicted improperly under [a] multiplicity theory." Responding to the State's argument that defendant could seek "a bill of particulars," defense counsel claimed that was "too little too late." Referencing the jury's verdicts on counts three and four, she argued it could not be determined "what exactly [was the jury] thinking when [it] said guilty to this, not guilty to that."
On April 1, 2011, the judge issued his oral decision from the bench. Regarding count four, he ruled:
I don't believe there can be a retrial with regard to count four. There is a not guilty finding on count three, which was identically pled, I think there is a presumptionthat... with count three being found not guilty, ... the identical count four would result in a double jeopardy of the defendant in this particular case.
Therefore, I wouldenter an order... as to count fourdouble jeopardy applies, and count four would be ... dismissed, as I believe it was also covered with regard to count three.
Although it is unclear whether defendant ever advanced an argument regarding counts five and six, the judge concluded:
Now, the issue then becomes with regard to counts five and six, which, ... although ... there was a guilty finding as to both, upon retrial ... how the court is supposed to address the issue on a verdict form and/or a jury charge where the identical ... language is used in both with regard to [the] amended criminal sexual contact. And how to parse out one from the other, based upon the pleadings.
The ... indictment ... other than a range, does not give [a] ... specific date or a specific act. I believe it allows the State to take, effectively, ... two bites at the apple here, with regard to those counts. I think you can allege the ... contact occurred in the set range, and have the jury decide whether, in fact, the testimony is sufficient to find guilt as to one or more acts in that ... time frame. But I don't think you can ask it twice of the ... jury to make a finding.
And I would find the indictment defective on that basis. Therefore, I would enter an order striking count six, as well, because I ... believe it allows the state two bites at the apple in this case....
The judge entered an order dismissing counts four and six of the indictment and stayed the order pending this appeal.

II.
We first consider the State's challenge to the dismissal of count six. Because the jury found defendant guilty of both counts five and six, and because we reversed on the basis of trial errors, as opposed to insufficient evidence, there is no double jeopardy concern. See State v. Koedatich, *203 118 N.J. 513, 519, 572 A.2d 622 (1990). The judge reasoned the indictment was "defective" because it charged defendant with two counts using identical language and time frames.
"Once the grand jury has acted, an indictment should be disturbed only on the clearest and plainest ground, and only when the indictment is manifestly deficient or palpably defective." State v. Hogan, 144 N.J. 216, 228-29, 676 A.2d 533 (1996) (citations and internal quotation marks omitted). "[T]he decision whether to dismiss an indictment lies within the discretion of the trial court ... and that exercise of discretionary authority ordinarily will not be disturbed on appeal unless it has been clearly abused." Id. at 229, 676 A.2d 533 (citation omitted). "A trial court decision will constitute an abuse of discretion where `the "decision [was] made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis."'" State v. Triestman, 416 N.J.Super. 195, 202, 3 A.3d 634 (App.Div.2010) (alteration in original) (quoting United States v. Scurry, 193 N.J. 492, 504, 940 A.2d 1164 (2008)) (in turn quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571, 796 A.2d 182 (2002)).
It is axiomatic that an indictment "must charge the defendant with the commission of a crime in reasonably understandable language setting forth all ... critical facts and ... essential elements" of the alleged offenses so as to enable defendant to prepare a defense. State v. Wein, 80 N.J. 491, 497, 404 A.2d 302 (1979). However, we have recognized that when an indictment charges a sexual crime against "a young victim[,] [it] will not have to be as exacting when specifying dates of abuse." State v. C.H., 264 N.J.Super. 112, 125, 624 A.2d 53 (App.Div.), certif. denied, 134 N.J. 479, 634 A.2d 526 (1993); see also Pressler & Verniero, Current N.J. Court Rules, comment 1.2.3 on R. 3:7-3 (2012) (noting that an indictment involving a child victim is adequate if it "otherwise gives defendant sufficient notice of the crimes to permit him to prepare his defense").
In assessing whether a defendant has received sufficient notice in cases involving allegations of sexual abuse against minor victims, the Court has instructed trial courts to consider
the length of the alleged period of time in relation to the number of individual criminal acts alleged; the passage of time between the alleged period for the crime and defendant's arrest; the duration between the date of the indictment and the alleged offense; and the ability of the victim or complaining witness to particularize the date and time of the alleged transaction or offense.
[In re K.A.W., 104 N.J. 112, 122, 515 A.2d 1217 (1986) (citation omitted).]
A trial court should also consider: "the age and intelligence of the victim," the State's attempt to narrow the time period between alleged offenses, and whether there was evidence of a continuing course of abusive conduct. Ibid.
In State v. Hass, 218 N.J.Super. 133, 135, 138-40, 526 A.2d 1156 (App.Div.1987), we reversed the trial judge's denial of a motion to dismiss an indictment that charged the defendant with three counts of sexual assault within the same time frame. We remanded, however, only for consideration of the factors that had recently been announced in K.A.W. Id. at 140, 526 A.2d 1156. Most importantly, we said, "[T]he central issue is whether, in light of the facts in the particular case (e.g. the age of the victim, the number of offenses and the time period involved), the defendant has received `fair notice' of the charges against him." Id. at 138, 526 A.2d 1156.
*204 Therefore, the particular reasoning used by the motion judgethat a defendant cannot be charged in two identical counts within the same time framewas flawed. What matters is whether there is sufficient notice so a defendant may prepare a defense. In the present case, consideration of the K.A.W. factors leads us to conclude that defendant had fair notice of the allegations.
The alleged sexual contact providing the basis for counts five and six occurred twice within a twenty-four hour period; approximately six months passed between the dates of the alleged abuse and the indictment; and T.B. was able to particularize dates and times of the offenses with great detail before the grand jury. While other factors set forth in K.A.W. cut in the opposite direction, it seems clear defendant received fair notice of two specific allegations of criminal sexual contact and when they allegedly occurred.
To be sure, defendant may not be tried for two identical criminal offenses in two separate counts based upon the same conduct. See State v. Widmaier, 157 N.J. 475, 489-90, 724 A.2d 241 (1999) (noting that double jeopardy protects a defendant from "multiple punishments for the same offense"). However, any double jeopardy concerns, or issues of non-unanimous guilty verdicts, may be addressed with carefully tailored jury instructions, a detailed verdict sheet or both. See State v. Frisby, 174 N.J. 583, 600, 811 A.2d 414 (2002) ("Courts should remain alert to the necessity of tailoring jury instructions to the facts and of utilizing a specific unanimity charge in any case in which the danger of a fragmented verdict is even reasonably debatable."); State v. Diaz, 144 N.J. 628, 644, 677 A.2d 1120 (1996) ("[W]hen there is a compelling need for the use of [verdict sheets], the trial court in its discretion should use them to avoid reversal of ambiguous verdicts."). Additionally, pursuant to Rule 3:7-5, the judge may, sua sponte or upon defendant's request, order the State to furnish a bill of particulars.
In short, the motion judge improperly exercised his discretion in dismissing count six of the indictment. We reverse that portion of the order under review.

III.
We now address the more difficult issue of whether the State's decision to try defendant again on count four, charging him with sexual assault by oral penetration, violates double jeopardy. The State contends that counts three and four reference entirely separate incidents, and, consequently, the double jeopardy bar does not apply. The State further argues that defendant cannot assert double jeopardy now because he "steer[ed]" the trial judge toward error in objecting to the verdict sheet proposed during the trial. The State contends that, under the "invited error" doctrine, defendant has waived any objection to being re-tried on count four.

A.
"[A] `defendant cannot beseech and request the trial court to take a certain course of action, and upon adoption by the court, take his chance on the outcome of the trial, and if unfavorable, then condemn the very procedure he sought and urged, claiming it to be error and prejudicial.'" State v. Jenkins, 178 N.J. 347, 358, 840 A.2d 242 (2004) (quoting State v. Pontery, 19 N.J. 457, 471, 117 A.2d 473 (1955)). "[I]nvited error also is designed to prevent defendants from manipulating the system. Therefore, the invited-error doctrine ... is implicated only when a defendant in some way has led the court into error." Id. at 359, 840 A.2d 242.
*205 The State's reliance upon the invited error doctrine is misplaced for two reasons. First, defendant did not assert error in the trial itself, nor did he raise that claim on direct appeal. Defendant's motion to dismiss count four was based upon a violation of double jeopardy occasioned by the retrial. In other words, defendant argued that the consequences of the first trial, a guilty verdict on count four but a not guilty verdict on the identical count three, foreclosed his re-trial on count four. The State has not brought to our attention, nor has our independent research revealed, any case that applied the invited error doctrine in such circumstances.
In addition, the trial prosecutor never objected to the judge's jury instructions, which failed to explain the different conduct alleged in counts three and four. Moreover, as the above-quoted colloquy demonstrates, the prosecutor ultimately assented to a verdict sheet that failed to differentiate between the conduct alleged in the two counts.
We recognize that at trial both the prosecutor and defense counsel viewed the case as an "all or nothing" proposition, i.e., the jury would either accept or reject T.B.'s testimony. However, the current situation reflects as much the consequences of the State's own conduct as it does defendant's alleged "invited error."

B.
The United States Constitution provides that no person "shall ... be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const., amend. V. New Jersey's constitutional bar against double jeopardy provides that "[n]o person shall, after acquittal, be tried for the same offense." N.J. Const. art. I, ¶ 11. Our double jeopardy provision has "consistently" been interpreted to be co-extensive with the protections afforded by its federal counterpart, and "protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." Widmaier, supra, 157 N.J. at 489-90, 724 A.2d 241. Additionally, N.J.S.A. 2C:1-9 provides that "prosecution of a defendant for a violation of the same provision of the statutes based upon the same facts as a former prosecution is barred" when "[t]he former prosecution resulted in an acquittal by a finding of not guilty by the trier of fact...."
We note initially that the current circumstances arise as a result of defendant's successful appeal. Recently, in State v. Handy, 421 N.J.Super. 559, 607, 25 A.3d 1140 (App.Div.2011) (citing In re Smigelski, 30 N.J. 513, 525, 154 A.2d 1 (1959)), certif. granted, 209 N.J. 99, 35 A.3d 682 (2012), we said that "the defense of double jeopardy is not available to a defendant who, by his own initiative, causes his previous ... conviction to be set aside." It is axiomatic that double jeopardy does not apply after a successful appeal when the retrial is for the same offense for which a defendant was convicted at trial. However, the essential question in this unusual case is whether by trying defendant under count four of the indictment, the State seeks to prosecute him for the "same offense" for which he was acquitted by the jury.
The longstanding rule for determining whether a second prosecution is for the "same offense" was expressed in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In that case, "[t]he Court stated that `where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there *206 are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.'" State v. DeLuca, 108 N.J. 98, 103, 527 A.2d 1355 (quoting Blockburger, supra, 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309), cert. denied, 484 U.S. 944, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987).
In DeLuca, supra, 108 N.J. at 107, 527 A.2d 1355, our Supreme Court slightly expanded the analysis, noting that the question is "whether the evidence actually used to establish guilt in the first prosecution is identical to that that will be used in the second prosecution." As we stated in State v. Capak, 271 N.J.Super. 397, 403, 638 A.2d 918 (App.Div.) (citing State v. Yoskowitz, 116 N.J. 679, 691, 563 A.2d 1 (1989)), certif. denied, 137 N.J. 164, 644 A.2d 612 (1994), "[i]n DeLuca, the Court `established that a second prosecution will be barred if either the "elements" test or the "evidence" test is satisfied.'" "If the same evidence used in the first prosecution is the sole evidence in the second, the prosecution of the second offense is barred." DeLuca, supra, 108 N.J. at 107, 527 A.2d 1355.
Additionally, our Court has recognized a more flexible rule that considers fundamental fairness as it relates to a defendant's "reasonable expectations in ... light of the constitutional and common law goals" of the double jeopardy prohibition. State v. Currie, 41 N.J. 531, 539, 197 A.2d 678 (1964); accord Yoskowitz, supra, 116 N.J. at 705, 563 A.2d 1. In such an analysis, "the emphasis should be on underlying policies rather than technisms." Currie, supra, 41 N.J. at 539, 197 A.2d 678.
None of these tests provide clear guidance in this case because it is impossible to ascertain of what specific conduct the jury acquitted defendant, and of what specific conduct it found him guilty. Although no New Jersey case has addressed double jeopardy considerations in similar contexts, we find guidance from other jurisdictions.
In State v. Heaven, 127 Wash.App. 156, 110 P.3d 835, 836 (2005), a Washington appellate court held that, where a defendant had been found not guilty on two of three identical counts and the jury could not reach a verdict on the third count, a retrial constituted double jeopardy. Noting that "[t]he charging document did not refer to specific acts [or] ... segregate charging periods among the three counts," the court concluded that "nothing would preclude a new jury from convicting [the defendant] for alleged incidents for which he already has been acquitted in the first two counts." Id. at 837-38.
Similarly, in Brown v. Superior Court, 187 Cal.App.4th 1511, 114 Cal.Rptr.3d 804, 818 (2010), a California appellate court considered double jeopardy implications where the defendant was accused of a number of sexual offenses against two minors, but "[n]either the instructions nor the verdict forms tied any particular count to a particular incident" testified to by the victims at trial. Because the defendant was found not guilty on some of those charges and the jury could not reach a verdict on others, the court held that double jeopardy precluded retrial on the counts that were identically-charged or were based upon the same conduct for which the defendant had been acquitted. Id. at 813, 820-21.
New Jersey has traditionally placed the burden upon a defendant seeking protection of the double jeopardy bar. In State v. Ebron, 61 N.J. 207, 214, 294 A.2d 1 (1972), the defendant argued that his acquittal in municipal court of possession of drug paraphernalia foreclosed his subsequent trial on an indictment for possession of narcotics seized at the same *207 place and time. In rejecting the argument because no transcript from the municipal court was available and the defendant failed to submit any "adequate substitute[ ]," the Court held that "a defendant in a criminal proceeding who relies upon the defenses of double jeopardy or collateral estoppel must place in evidence such material as he wishes the court to consider in support of this plea." Id. at 217-18, 294 A.2d 1; accord State v. Colon, 374 N.J.Super. 199, 218, 863 A.2d 1108 (App.Div.2005) (observing that a "[defendant] must demonstrate that the first prosecution encompassed all the facts utilized in the second"); Capak, supra, 271 N.J.Super. at 401 n. 3, 638 A.2d 918 (App.Div.) (noting that the "[d]efendant has the burden of proving her double jeopardy claim") (citing Ebron, supra, 61 N.J. at 215-18, 294 A.2d 1), certif. denied, 137 N.J. 164, 644 A.2d 612 (1994).
However, in Brown, supra, 114 Cal. Rptr.3d at 818, the court reasoned that "upon [the defendant's] nonfrivolous showing that he faces prosecution for an offense for which he was formerly placed in jeopardy," the burden should be shifted "to the prosecutor to establish by a preponderance of evidence that the charges to be retried involved different offenses [from] those [to defendant] had already been convicted or acquitted." "To do otherwise would force [defendant] to overcome the uncertainty, confusion, and procedural disadvantage attributable to the prosecutor's tactical decisions." Ibid. (emphasis added); see also People v. Smith, 132 Cal.App.4th 1537, 34 Cal.Rptr.3d 472, 480 (2005) (noting under similar circumstances that it was proper to "shift[ ] the burden to the prosecution once defendant makes a nonfrivolous showing that an indictment or information charges him with an offense for which he was formerly placed in jeopardy").
Under the unique facts presented in this case, we conclude that defendant has presented a colorable argument that his retrial on count four will violate double jeopardy. Therefore, it is up to the State to establish that prosecuting defendant on count four would not.
Although T.B. testified before the grand jury that there were two discrete acts of oral penetration, he testified at trial that oral penetration occurred during three separate incidents within the time frame specified in the indictment. As noted, neither the jury instructions nor the verdict sheet isolated which incident corresponded to each count. The not guilty verdict on count three, therefore, did not serve to eliminate any specific alleged criminal conduct from the jury's consideration on retrial. In other words, theoretically all of defendant's alleged conduct can serve as the basis for the sexual assault by oral penetration alleged in count four.
At oral argument before us, the State was unwilling to identify what specific conduct was now the subject of the retrial. Moreover, the State would not proffer what evidence it intended to adduce at retrial. If we assume that the State would seek to introduce evidence regarding all the incidents of alleged oral penetration, perhaps under the rubric of N.J.R.E. 404(b), the evidence at the retrial would be identical to the evidence at the initial trial. In short, we could not say with any confidence that defendant would not endure "a second prosecution for the same offense after acquittal," something categorically prohibited by our double jeopardy jurisprudence. See Widmaier, supra, 157 N.J. at 489, 724 A.2d 241.
Our conclusion may seem unwarranted given the jury verdict of guilty on count four. Undoubtedly, "the State has an important sovereign interest to deter wrongful acts and to punish appropriately the persons who commit them." Handy, supra, 421 N.J.Super. at 581, 25 A.3d 1140. *208 However, it has long been recognized that "the language of [the indictment] must be sufficiently detailed to avoid the risk of double jeopardy, successive prosecutions for the same transgression." Wein, supra, 80 N.J. at 497, 404 A.2d 302. We do not lightly affirm the order dismissing count four with prejudice, but, under the circumstances presented, we are compelled to do so.
Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.
NOTES
[1] These charges were downgraded before trial to fourth-degree criminal sexual contact N.J.S.A. 2C:14-3(b).
[2] We have been provided with only portions of the trial transcript. The trial testimony of T.B., the charge conference and the jury charge were included in the record on appeal. Defendant raised no objection.
[3] We have quoted the transcript verbatim, although it appears confusing. The verdict sheet as originally proposed and prior to any changes being made is not in the record.